MAGNA MORTGAGE COMPANY, formerly The Millikin Mortgage Company, Plaintiff-Appellant, v. DONALD WEBBER MORTGAGE COMPANY, INC., Defendant-Appellee.

Fourth District   No. 4—87—0615

Opinion filed March 9, 1988.

Jon D. Robinson, of Hull, Campbell & Robinson, of Decatur, for appellant.

Nicholas J. Neiers and Martin D. Hoke, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 24, 1987, plaintiff Magna Mortgage Company filed a second-amended complaint against defendant Donald Webber Mortgage Company, Inc., in the circuit court of Macon County alleging breach of contract. On May 15, 1987, defendant filed a motion to dismiss that complaint. Curiously, the first contention of the motion was that the complaint should be dismissed under section 2—619(a)(9) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)). That provision concerns affirmative matter which avoids or defeats the claim alleged. Nothing affirmative was alleged. However,

in the alternative, the motion requested dismissal pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). Under section 2—615, the sufficiency of the allegations of a pleading may be attacked. The motion was heard on July 10, 1987, and was taken under advisement. On August 6, 1987, the court dismissed the complaint with prejudice. Plaintiff has appealed.

■ The parties dispute the purpose of motions under sections 2—619 and 2—615 of the Code. We conclude that, regardless of the limits of such motions (see *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc.* (1976), 42 Ill. App. 3d 199, 355 N.E.2d 632), defendant's previously described motion was sufficient to raise a question of whether the complaint stated a cause of action, and it did not raise any affirmative matter which would defeat an action properly stated. We hold the complaint stated a cause of action, reverse the judgment of dismissal, and remand for further proceedings.

A copy of the contract which was the subject matter of the suit was attached to the complaint. The complaint described the contract as one whereby defendant sold to plaintiff "certain mortgaged loans." However, the parties agree, and the complaint as a whole and the contract indicate, the agreement was actually one whereby defendant assigned to plaintiff the right to service several hundred loans, the principal balance of which totalled over $45 million. The parties further agree as to the nature of the business involved. In the typical situation, a lender such as defendant might originate numerous loans and then sell them to investors such as FNMA (Federal National Mortgage Association or "Fannie Mae") and GNMA (Governmental National Mortgage Association or "Ginnie Mae"). In doing so, the lender often retains the right to service the loans it sells, and, in exchange for this service, the investor pays the lender a servicing fee on the loans. The entity holding the servicing rights is often required to pay each mortgage indebtedness when it comes due, regardless of whether the mortgage is in default. Meltzer & Goldman, *Condominium & PUD Unit Loans & the Secondary Mortgage Market*, in Advising Illinois Financial Institutions ch. 7, §7.2 (Ill. Inst. for Cont. Legal Educ. 1987).

Plaintiff's contention in its second-amended complaint, that defendant breached the contract, is based on paragraph 10 of the contract, which states:

> "That Seller bears *complete risk of any loss of or to any of the assets being sold and conveyed to Purchaser* hereunder, and Purchaser shall have no obligation to include in the purchase price payment for any assets or rights which are sold pursuant

to this agreement but which are unable to be transferred and delivered by Seller to Purchaser as of the date of closing." (Emphasis added.)

The complaint sought recovery for damages allegedly suffered by plaintiff as a result of a fire on property at 1340 Hirsch Street, Calumet City, Illinois. This property was encumbered by a mortgage securing one of the loans, the servicing rights to which were transferred by the terms of the contract. In this regard, the complaint alleged: (1) the contract was executed on or about June 6, 1982; (2) on September 2, 1982, a fire destroyed substantial portions of the improvements on the Hirsch Street premises; (3) the closing on the contract occurred on September 9, 1982, during which various transfers took place; (4) subsequently, plaintiff was required to bring suit on the fire insurance policy covering the Hirsch Street premises in order to protect the security for that loan; (5) because of defendant's prior conduct, plaintiff lost that suit; and (6) because of the mortgagee's delinquency, plaintiff has been required to make substantial mortgage payments on the loan on the Hirsch Street property. The complaint also stated plaintiff had performed all conditions precedent required of it under the contract, and defendant had refused to reimburse it for its damages.

■ According to the allegations of the complaint, the fire occurred between the date of the execution of the contract and the closing of the contract, but the loss of the litigation concerning the fire insurance policy did not occur until after closing. The complaint did not expressly state plaintiff sustained damage to its subrogation rights to the mortgage premises arising from the fire and subsequent invalidation of the fire insurance policy. However, we conclude the complaint implies that to be the case. Such damages would be the only loss alleged to have occurred for which defendant could be required to bear the loss under paragraph 10 of the contract.

■ We agree with defendant that the direct loss to plaintiff as shown by the complaint arose from the default of the mortgage on the Hirsch Street premises. Defendant is not liable under the contract for this default or that mortgage, because the parties stipulated the Hirsch Street loan was one of over 100 loans which were in default at the time the parties entered into the contract. The contract price which plaintiff paid defendant was based upon a percentage of the principal balance of the loans not in default. The context of the contract makes clear defendant was not guarantying this loan would be paid. However, upon making these payments, plaintiff would be expected to rely, for at least partial reimbursement, upon its subrogation rights in the mortgaged property. We infer the complaint to have

alleged these rights of plaintiff were damaged. These subrogation rights were incident to the obligation to make the periodic loan payments which, in turn, were incident to the right to service the mortgage. Thus, the subrogation rights were "assets being sold and conveyed" within the meaning of paragraph 10 of the contract and were subject to its risk of loss provisions.

■ Both the second-amended complaint and the underlying contract are so replete with loose jargon of the mortgage lending trade as to negate any substantial degree of precision in either document. On the other hand, the use of the section 2—619 procedure by defendant to test the sufficiency of the complaint also confused the matter. We deem the second-amended complaint barely sufficient to pass a section 2—615 motion. (Compare *Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340; *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224.) Accordingly, we reverse and remand the cause to the circuit court of Macon County. Upon remand, defendants should not be precluded from requiring a more definite and certain statement or from moving to strike particular portions of the complaint. Damages should be allowed only to the extent they flow from the damage to plaintiff's rights of subrogation to the security of the mortgage on the Hirsch Street premises.

Reversed and remanded with directions.

LUND and SPITZ, JJ., concur.